STATE OF MINNESOTA ex rel. HENRY W. CHILDS, Attorney General, and Another, v. SAMUEL F. WADHAMS.[1]

May 6, 1896.

Nos. 10,141—(319).

**Duluth Charter — City Assessor — Appointment — Confirmation by Council—Power to Reconsider.**

Section 1, c. 9, of the charter of the city of Duluth provides that in the month of March, 1888, and every two years thereafter, the mayor, by and with the advice and consent of the common council, shall appoint a city assessor, whose term of office shall be two years, commencing on the first Monday of April of the year of his appointment, and who shall so hold until a successor is appointed and qualified. The respondent, W., was so appointed in the month of March, 1894, and claimed a right to hold the office for more than two years as against the relator, upon the ground that he was not lawfully appointed. H. was appointed city assessor March 9, 1896, by the mayor, which appointment was duly confirmed by the common council March 23, 1896, and so declared by its presiding officer, and the vote of confirmation duly recorded by its clerk, and, with other proceedings of the common council, duly published in the official newspaper of the city of Duluth, March 27, 1896. At a meeting of the common council held March 30, 1896, a motion to reconsider this appointment was carried, and a motion to confirm the appointment of the relator H. was lost. *Held*, that the appointment of H. by the mayor with the advice and consent of the common council was a completed appointment and finality; that the common council had, by its confirmation, exhausted its power in such matters, and could not lawfully reconsider the question of such appointment and confirmation.

**Same—Qualification—Bond and Oath.**

*Held*, also, that notwithstanding the charter of the city of Duluth contains a provision that every officer elected thereunder shall, before he enters upon the duties of his office, take and subscribe an oath, and file the same with the city clerk, within 10 days after his notice of election, yet this pro-

1 Reported in 67 N. W. 64.

vision must be construed in connection with another provision of said charter specifically providing that the city assessor shall qualify in the manner and discharge the duties prescribed by the general law; and that, as such general law provides that every person elected or appointed assessor shall execute a bond to the state of Minnesota, and subscribe thereon his oath of office at or before the time of receiving the assessment books, which is the last Saturday in April in every year, the execution by H., the relator, of his official bond, and subscribing his oath thereon, and filing the same with the county auditor on April 4, 1896, was a compliance with the requirements of the law.

## Judgment for Relator.

Upon the facts it is ordered that the respondent, W., be ousted and excluded from the office of city assessor of the city of Duluth, and that the relator H. is entitled to hold said office and take possession thereof.

Quo warranto on the relation of Henry W. Childs, attorney general, and Thomas B. Hawkes against Samuel F. Wadhams. Judgment of ouster.

*Henry W. Childs*, Attorney General, and *C. d'Autremont, Jr.*, for relators.

*Ellsworth Benham*, for respondent.

BUCK, J. This is a proceeding in quo warranto to oust and exclude the respondent, Samuel F. Wadhams, from the office of city assessor of the city of Duluth, and to have the relator Thomas B. Hawkes adjudged entitled to said office, and admitted to the same, with all the rights, privileges, and emoluments thereof.

The charter of the city of Duluth provides [2] that "in the month of March, A. D. 1888, and every two years thereafter, the mayor by and with the advice and consent of the common council shall appoint one assessor, who shall be an officer of said city, styled 'city assessor.' The term of office of city assessor shall be two years commencing on the first Monday of April of the year of his appointment and until his successor is elected and qualified. * * * The city assessor and his deputies shall qualify in the manner and discharge the duties prescribed by general law."

On March 12, 1894, the mayor of Duluth appointed the respondent, Wadhams, as city assessor for the term of two years, beginning on the first Monday in April, 1894, and until his successor

[2] Sp. Laws 1887, c. 2, subc. 9, § 1.

was elected and qualified, and on March 19, 1894, his appointment was confirmed by the common council of said city, and he has since held, occupied, and enjoyed said office. On March 9, 1896, the mayor of the city of Duluth appointed in writing Thomas B. Hawkes, the relator, city assessor of the city of Duluth in the place of Wadhams, and sent this written appointment to the common council of the city of Duluth at a regular meeting which it held on the last-named day, and this appointment was by said council referred to one of its committees, known as the "committee on public offices, officers, and elections," composed of three persons. At a regular meeting of the council held March 23, 1896, this committee made two reports, as follows: Two members presented a majority report, accompanied by a resolution recommending that the appointment of the relator Hawkes be not confirmed; and the other member presented a minority report, accompanied by a resolution recommending that the appointment of the relator Hawkes be confirmed. Upon motion the minority report was substituted in place of the majority report by a vote of 10 yeas to 5 nays, and it was so announced by the clerk of the council, and declared carried by the president thereof. Thereupon a motion was made that the minority report, carrying with it the resolution of confirmation of the relator Hawkes be adopted, and it carried by a vote of 9 yeas to 6 nays, and, upon the announcement thereof being made by the clerk, the president of the council declared the resolution carried, and on the succeeding day this resolution was presented to the mayor of the city, who signed and approved it March 24, 1896, and it, with other proceedings of the city council, was duly published in the official newspaper of the city of Duluth, March 27, 1896. At a meeting of the said common council held on March 30, 1896, Alderman Hanson, who claimed to have voted, under a mistake, with the majority, moved to reconsider the vote taken at the meeting held March 23, 1896, confirming the appointment of the relator Hawkes, which motion was carried by a vote of 9 yeas to 7 nays, and, the question then being upon the adoption of the minority report to confirm the appointment of the relator, the motion was declared lost by a vote of 7 yeas to 9 nays. No other person has been appointed city assessor.

On April 4, 1896, the relator Hawkes duly filed a proper official bond with the auditor of St. Louis county, with approved sureties, and took and subscribed on said bond, before said auditor, the oath of office required by law. On the first Monday in April, viz. April 6, 1896, the term of office of the respondent, Wadhams, as city assessor, having expired, Hawkes demanded of him the possession of said office, which was refused, and Wadhams, on April 4, 1896, also filed a bond and oath of office with the county auditor, and also filed another oath of office in the office of the city clerk of the city of Duluth. In this connection, assuming that Hawkes was legally appointed city assessor,—a matter which will be discussed further on in this opinion,—we will discuss the question of whether Hawkes filed his oath of office in the proper office.

We have already quoted a provision of the charter of the city of Duluth which expressly provides that assessors and their deputies shall qualify, and discharge the duties prescribed by general law. G. S. 1894, § 1538, provides that every person elected or appointed to the office of assessor shall, at or before the time of receiving the assessment books, file with the county auditor his bond, payable to the state of Minnesota, with at least one good freehold surety to be approved by the auditor, in the penal sum of $500, conditioned that he will diligently, faithfully, and impartially perform the duties enjoined upon him by law; and he shall, moreover, take and subscribe on said bond an oath that he will, according to the best of his judgment, skill, and ability, diligently, faithfully, and impartially perform all the duties enjoined upon him by this act; and, if any person so elected or appointed fails to give a bond, or fails to take the oath required within the time prescribed, such failure shall be deemed a refusal to serve. Section 1537 provides that the assessment books and blanks shall be in readiness for delivery to the assessor on the last Saturday in April in each year, and the assessors shall meet on that day at the office of the county auditor for the purpose of receiving such books and blanks. If the general law is applicable to the manner in which the city assessor of the city of Duluth is required to qualify, then Hawkes had until the last Saturday in April to do this,—a day long subsequent to the time when he actually filed his bond and took the required oath of office, viz. April 4, 1896.

64 M.—21

Several authorities hold that the statute fixing the time in which an official bond shall be given and an official oath taken is not applicable to one kept out of office by another and where it is uncertain whether he can ever obtain the office; and that the statute in this respect is directory. Throop, Pub. Off. 183.

The respondent contends that section 10, c. 2, of the charter of the city of Duluth [3] is applicable to the manner in which the city assessor shall qualify. It is provided in that section that every person elected or appointed to any office under this act shall, before he enters upon the duties of his office, take and subscribe an oath of office with the city clerk. Section 9 of the charter [4] further provides that if any officer shall neglect or refuse for 10 days after notice of his election or appointment to qualify by taking the oath of office, and giving the necessary bond, when one is required by the charter or the common council, he shall be deemed to have vacated his office. While the provisions of the charter in regard to the manner in which the city assessor shall qualify are in some respects seemingly conflicting, yet, taking these provisions and the general law upon the subject and duties relating to assessors, we think it may be fairly held that it was the intent of the lawmakers and the meaning of the law that the bond of the city assessor and his oath of office should be filed with the county auditor.

There is no express provision in the charter of the city of Duluth requiring the city assessor to execute a bond. This, of itself, is a very significant fact. The office of assessor is one of great importance and responsibility. It is through a just and impartial assessment of all kinds of property that the burden of maintaining the government is to be found. To this end the general law requires a bond, full and definite in its requirements, enjoining upon the assessor that he diligently, faithfully, and impartially perform the duties required of him by law. Upon this bond is to be placed the solemn obligation of his oath that he will so perform his duties. Again, the city assessor is to receive the assessment books and the necessary blanks from the county auditor, and it is very appropriate, and quite necessary, that the county

[3] Sp. Laws 1887, c. 2, subc. 2, § 10.     [4] Id. § 9.

auditor should have in his office some satisfactory evidence that he is delivering them to the proper officer. The filing of the official bond and the official oath of office in his office by the assessor is notice that the assessor has accepted such office, and furnishes prima facie grounds to the auditor for delivering the assessment books and blanks to such assessor. The duties of a city assessor do not appertain solely to the affairs of a city, but the state and county taxes are based upon his assessment. His bond runs to the state of Minnesota, not to the city of Duluth.

A provision in the charter of the city of Duluth [5] authorizes the common council to require of every person elected or appointed to an office under said charter to execute a bond to said city in such amount and upon such conditions as it may prescribe and approve. If this rule is applicable to the office of city assessor, the bond might be in an amount and with entirely different conditions from those prescribed by general laws respecting other assessors, and assessors' bonds would not, therefore, be uniform in amount or in their conditions and obligations. Or, if the common council did not deem it necessary, the assessor would not be required to give any bond under the terms of the charter, in which case G. S. 1894, § 5951, would apply, viz. that when no other provisions are made by law for the giving of a bond as security for official delinquencies, it shall run to the state. It does not appear that the common council ever required any bond from the assessor, and the one executed by Hawkes runs to the state of Minnesota, and, in case of delinquency, the attorney general would be the proper party to prosecute the bond. We do not think that the charter contemplates any action of the common council in regard to the assessor giving a bond, or that he shall file his oath with the city clerk. That a bond is required by the general law, upon which the assessor's oath is to be taken, and filed with the county auditor, is apparent, and the relator in this respect has complied with the requirements of the law. It is not necessary that the assessor take two official oaths, and it is quite proper that the one taken be filed in the same office with the official bond.

We now come to the consideration of the question as to whether

[5] Sp. Laws 1887, c. 2, subc. 2, § 10.

the common council of the city of Duluth duly confirmed the appointment of the relator Hawkes as city assessor, and whether the confirmation was final or revocable.

There is no pretense that the mayor did not exercise his right of appointment in strict accordance with the legislative authority. Before this appointment could become fully consummated and complete, it must, however, be sanctioned by the advice and consent of the common council. This appointment was submitted to the common council, and upon motion duly made and seconded it was confirmed by a vote of nine yeas in favor and six nays against it, and declared carried by the presiding officer, and so recorded by the clerk. Nine members constituted a majority of the common council. We find in the charter of the city of Duluth nothing more necessary to make this a consummated and complete appointment in every respect. The method appears to have been parliamentary and legal, and free from fraud or trickery. It was the will of the people, fairly expressed through their legally constituted officials, and this will of the people, once fairly exercised and consummated, should not be thwarted by subsequent considerations, unless fully sustained by a rational view of the law. We are of the opinion that the appointing power in this case was completely exercised, and that such power was irrevocable by the common council. The exact method for creating the relator city assessor had been complied with, and we think he was thereby as fairly entitled to the office as though he had been elected to it by ballot at a regularly held election, and that, this right having once been conferred upon him, he could not be deprived of it by any subsequent reconsideration of the vote whereby his appointment was duly confirmed.

"A public office is a public trust," and the incumbent has to some extent a property right in it, which he holds, not subject to barter and sale, but for the benefit of that political society of which he is a member. Of course, he is liable to be removed for cause, but it is not contended that the vote of confirmation was reconsidered or rescinded upon any ground which would constitute sufficient cause for removal, and, even if it had been upon such ground, the affirmative vote was insufficient, under the charter, for such

purpose.[6] It is to be observed that it is through these reconsideration proceedings of the common council, had at a subsequent meeting on March 30, 1896, that the relator's appointment is assailed. But before this time the appointment had been promulgated in addition to being duly declared and entered of record, and notice thereof publicly proclaimed. The law does not require any certificate of appointment to be given, nor does any commission issue in such case. Everything necessary to constitute a finality, and perfect it, had been done, and, the power of the common council having been exhausted at the time of the confirmation of the appointment, it had no authority to reconsider it. In support of these views see State v. Phillips, 79 Me. 506, 11 Atl. 274; Whitney v. Van Buskirk, 40 N. J. Law, 463. The allegation of mistake of Alderman Hanson in casting his vote, and his moving to reconsider, and his vote thereon, we regard as entirely immaterial, and express no other views upon it.

Our conclusion is that the respondent, Samuel F. Wadhams, has usurped and unlawfully holds the office of city assessor of the city of Duluth, in the county of St. Louis, and state of Minnesota, and that the relator Thomas B. Hawkes is entitled to hold said office, and to be put in possession thereof. It is therefore adjudged that said respondent, Samuel F. Wadhams, is guilty of unlawfully holding and exercising the office of city assessor of the city of Duluth, in this state, and that he be ousted and excluded from said office. And it is further ordered and adjudged that the relator Thomas B. Hawkes is entitled to hold said office of city assessor of the city of Duluth, and to take upon himself the execution thereof, and to be put in immediate possession of the same and of the books and papers belonging thereto, and that judgment be entered accordingly.

[6] Sp. Laws 1887, c. 2, subc. 8, § 4.